IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

*******

ELK MOUNTAIN MOTOR SPORTS,
INC.,

     Plaintiff,

vs.

ARCTIC CAT SALES, INC.,

     Defendant.

CV 13-7-H-CCL

ORDER

*******

Before the Court is Defendants' Motion to Compel Arbitration (ECF No. 2).

Plaintiff opposes the motion.  The Court sits in diversity jurisdiction pursuant to

28 U.S.C. § 1332 and therefore has subject matter jurisdiction to determine the

threshold question of whether a valid agreement to arbitrate exists.  After

reviewing the briefs and arguments of counsel and all the record, the Court is

prepared to rule on the Motion.

1.    Background.

The dispute in this case arises from the relationship between Elk Mountain Motor Sports, Inc., ("Elk Mountain"), a Montana corporation with its principal place of business in Helena, Montana, and Arctic Cat Sales, Inc. ("Arctic Cat"), a Minnesota corporation with its principal place of business in Thief River Falls, Minnesota.  (ECF No. 1-2, ¶¶ 1-2.)  Arctic Cat manufactures snowmobiles and all terrain vehicles.  Beginning in 2002, Elk Mountain became a non-exclusive, authorized dealer for Arctic Cat vehicles, accessories, and garments.  (ECF No. 7-1, Aff. McWilliams, ¶ 2.)  Elk Mountain has invested more than $600,000 in its facility and training its employees to meet the requirements Arctic Cat imposes on its dealers.  (ECF No. 7-1, Aff. McWilliams, ¶ 3.)  The relationship apparently began to fray in 2011, to such an extent that by November 15, 2011, Elk Mountain notified Arctic Cat that Elk Mountain considered the dealership to be constructively terminated.  Elk Mountain now brings its Complaint seeking damages allegedly suffered by it as a result of the termination.

Beginning in 2002, Elk Mountain signed multiple dealership agreements

(one for each product line or type of sales) on an annual basis .  (ECF No. 7-1, Aff. McWilliams, ¶¶ 6-7.)  In 2009, a "new form contract" (the "Dealer Agreement") was presented to Elk Mountain by Arctic Cat, and Elk Mountain was told that "it would be more convenient for [Arctic Cat's] dealers, because they now only had to sign one agreement for all of the Arctic Cat products they were authorized to sell, and Arctic Cat had extended the term of that one agreement for a period longer than one year."  (ECF No. 7-1, Aff. McWilliams, ¶ 7.)  The new term ran to March 31, 2012, and after signing in June, 2009, the actual term was for thirty-three months.  (ECF No. 3-1, ¶ 15.)  The Dealer Agreement also contained an arbitration clause.  (ECF No. 3-1, ¶ 20.)  The arbitration clause is set forth in its own distinct subsection, numbered 20, and subtitled "Arbitration" in bold letters. It calls for arbitration of

> [a]ll disputes, controversies, and claims arising out of or in connection with the execution, interpretation, performance, non-performance, or breach (including without limitation the validity, scope, enforceability, and voidability under any statute, regulation, ordinance, or ruling, or termination or nonrenewal of this Agreement, or of any provisions of this Agreement (including without limitation this arbitration provision and the arbitrability of any issue) . . shall be

solely and finally settled by arbitration at Minneapolis, Minnesota
(unless this location is not permitted under applicable law), in
accordance with the United States Arbitration Act (9 U.S.C. 1 et
seq.), and the rules of the American Arbitration Association relating
to commercial arbitration.  There shall be a single arbitrator who shall
be a lawyer with at least five years of significant experience related to
business law.  The arbitrator shall have the right to award or include
in any award the specific performance of this Agreement; provided,
that the arbitrator shall not have the right to issue any award or
include in any award that relief which is more than could be awarded
by a federal or state court located in the State of Minnesota.

(ECF No. 3-1, ¶ 20(a).)  The arbitration provision is divided into five subsections

which, in addition to the subsection quoted above, identify the binding nature of

the agreement, the obligations of the parties to the arbitrator, the treatment of any

public policy defense to arbitration, and the survival of the arbitration provision

after termination of the Dealer Agreement.  (ECF No. 3-1, ¶ 20(a)-(e).)

The owner and president of Elk Mountain Motor Sports, Robert

McWilliams, alleges that he thought he was just renewing the Dealer Agreement

as in the past, although he concedes that he was told by an Arctic Cat

representative that the agreement addressed terms that had previously been

contained in multiple agreements and that the agreement had a longer term than

4

the previous annual agreements.  (ECF No. 7-1, Aff. McWilliams, ¶ 7.)

McWilliams asserts that "[e]ven if somebody had called my attention to the

inclusion of the arbitration clause in the 6/30/09 Dealer Agreement, I still would

have signed it on behalf of Elk Mountain."  (ECF No. 7-1, Aff. McWilliams, ¶ 8.)

2.     Legal Standard.

        Under Montana law, arbitration agreements are valid and enforceable.

*Kortum-Managhan v. Herbergers NBGL*, 204 P.3d 693 (Mont. 2009); §27-5-114,

MCA.  However, the Federal Arbitration Act ("FAA") governs this dispute

because it involves a transaction implicating interstate commerce.  9 U.S.C. § 4;

*Perry v. Thomas*, 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426

(1987).  By enacting the FAA, Congress has set a policy favoring arbitration

unless grounds exist at law or in equity to revoke the agreement.  9 U.S.C. § 2.  In

*Southland Corp. v. Keating*, 465 U.S. 1, 4-5, 104 S.Ct. 852, 79 L.Ed. 1 (1984), the

United States Supreme Court held that the FAA "create[d] a body of federal

substantive law," which was "applicable in state and federal courts."  465 U.S. at

12, 104 S.Ct. 852 (internal quotation marks omitted).  State law (even state claims

5

brought in state court) cannot bar enforcement of § 2 of the FAA.  *See id.* at 10-14,

*see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270-73, 115 S.Ct.

834, 130 L.Ed.2d 753 (1995).

> Section 2 of the FAA provides that

> A written provision in . . . a contract ... to settle by arbitration a
> controversy thereafter arising out of such contract ... or an agreement
> in writing to submit to arbitration an existing controversy arising out
> of such a contract ... shall be valid, irrevocable, and enforceable, save
> upon such grounds as exist at law or in equity for the revocation of
> any contract.

9 U.S.C. § 2.  Thus, general contract law governs whether an arbitration agreement

is valid.  *AT&T Mobility LLC v. Concepcion*, ___ U.S. ___, 131 S.Ct. 1740, 1745-

46, 179 L.Ed.2d 742 (2011).  Arbitration provisions are subject to "'generally

applicable contract defenses, such as fraud, duress, or unconscionability....'"

*Concepcion*,  ___ U.S. ___, 131 S.Ct. at 1746 (quoting *Doctor's Associates, Inc. v.

Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)).  Elk

Mountain's argument asserting that it is entitled to rely on the Montana Motor

Vehicle Act to block arbitration must be rejected according to the line of Supreme

6

Court cases, including *Concepcion*, 131 S. Ct. 1740 at 1753, which holds that a state law that stands as an obstacle to the purpose of Congress in enacting the FAA, cannot be used to override arbitration agreements.  In *Concepcion*, the Court states definitively that  "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward:  The conflicting rule is displaced by the FAA."  *Concepcion*, 131 S. Ct. at 1747; *see also Volt Information Sciences v. Board of Trustees*, 489 U.S. 468, 474, 109 S. Ct. 1248, 1253, 103 L.Ed.2d 488 (1989) (FAA preempts state legislative attempts to limit enforceability of arbitration agreements).

Challenges that go specifically to the making of the agreement to arbitrate itself should be decided by the court.  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).  However, challenges against the contract generally must be decided by an arbitrator.  *Nitro-Lift Techs., L.L.C. v. Howard*, ___ U.S. ___, 133 S.Ct. 500, 503, 184 L.Ed.2d 328 (2012).  Under Montana law, also, once an arbitration provision is determined to be valid, "challenges to the contract as a whole are properly decided via

arbitration, given the existence of an arbitration clause." *Martz v. Beneficial Montana, Inc.*, 135 P.3d 790, 794 (Mont. 2006).

The party seeking to compel arbitration carries the burden of persuasion, by a preponderance of the evidence, that a valid arbitration exists. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010). In 2000, the Montana Supreme Court stated that "uncertain terms in a contract [arbitration provision] are to be construed strictly against the party causing the uncertainty." *Kingston v. Ameritrade, Inc.*, 12 P.3d 929, 933 (Mont. 2000) (citing *Frates v. Edward D. Jones and Co.*, 760 P.2d 748, 752 (Mont. 1988), and *Mueske v. Piper, Jaffray & Hopwood, Inc.*, 859 P.2d 444, 449-50 (Mont. 1993)). Expanding upon that proposition and citing *Kingston*, the Montana Supreme Court stated in 2009 that in reviewing the granting of a motion to arbitrate, it would take all allegations of fact by the nonmoving party as true. *See Kortum-Managhan v. Herbergers NBGL*, 204 P.3d 693, 696 (Mont. 2009). The Court will observe this rule stated in *Kortum-Managhan*, noting, however, that this standard is not consistent with the application of "a standard similar to the summary judgment

standard of [Federal Rule of Civil Procedure 56]." *Nguyen v. Barnes & Noble, Inc.*, 2012 WL 3711081, at *2 (C.D. Cal. Aug. 28, 2012) (quoting *Concat LP v. Unilever, PLC*, 350 F.Supp.2d 796, 804 (N.D. Cal. 2004)); *see also Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 916-17 (Cal. 1997) ("[A] party opposing the petition [for arbitration] bears the burden of proving by a preponderance of the evidence any fact necessary to its defense."); *Arguelles-Romero v. Superior Court*, 184 Cal.App. 4th 825, 836 (Cal. Ct. App. 2010) (party resisting arbitration bears burden of persuasion as to unconscionability).

The gateway issue of whether an arbitration clause applies to a particular dispute is to be decided by courts. *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (plurality opinion). In addition, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). We "construe ambiguities concerning the scope

of arbitrability in favor of arbitration." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 66, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995).  So too, Montana "resolv[es] any doubts concerning the scope of arbitrable issues in favor of arbitration." *Kingston v. Ameritrade, Inc.*, 12 P.3d 929, 932 (Mont. 2000) (citing *Vukasin v. D.A. Davidson & Co.*, 785 P.2d 713, 718 (Mont. 1990)).

3.     Analysis.

       Preferring to demonstrate solely that the arbitration clause is unenforceable, Elk Mountain makes no argument that its claims are beyond the scope of the arbitration clause.  That scope is in fact quite broad; it provides that "all disputes . . . in connection with the . . . performance, . . . termination or nonrenewal of this [Dealer] Agreement . . . or arising out of . . . any claimed . . . right, or remedy . . . relating to any of the foregoing, shall be solely and finally settled by arbitration. . ."   (ECF No. 3-1, ¶ 20(a).)  The Court has no doubt that Plaintiff's claims are within the broad scope of the arbitration clause.

       Turning, then, to the validity of the arbitration clause itself, the Court notes that McWilliams does not dispute that he signed the Dealer Agreement or that it

contains an arbitration provision.  Instead, he asserts that Arctic Cat prepared the Dealer Agreement and that Elk Mountain had no opportunity to negotiate the terms of the agreement.  (ECF No. 7-1, Aff. McWilliams, ¶ 4.)

Elk Mountain therefore asserts that the arbitration provision contained in the Dealer Agreement is unconscionable because it is a contract of adhesion, because the clause exceeds Elk Mountain's reasonable expectations, is oppressive, and is unconscionable, and because the arbitration clause is contrary to Montana law and public policy.  The Court applies Montana law in the first instance to determine the enforceability of an arbitration clause in a franchise agreement.  *See Ticknor v. Choice Hotels International*, 265 F.3d 931, 937 (9th Cir. 2001).

First, the Court considers whether the arbitration provision was within the reasonable expectations of a corporation engaged in a commercial transaction (a dealership agreement), *see Kortum-Managhan*, 204 P.3d at 699, ¶27, and the Court finds that it was.  The arbitration provision is set forth separately and labeled as such in bold letters, and the contents of the provision are clear.  The provision explicitly states that the arbitrator's decision is binding on the parties

and that "the parties waive all respective rights to further appeal or redress in any other forum as to matters decided by the arbitrator. . . ."  (ECF No. 3-1, ¶ 20(b).) The arbitration clause is therefore conspicuous and not misleading.

The Court concludes that McWilliams did not understand the arbitration provision primarily because he did not read it. This Court cannot find that an agreement exceeded the reasonable expectations of a corporate entity based on the mere fact that its representatives failed to read the contract.  "It is well established in Montana that one who executes a written contract is presumed to know the contract's contents."  *First Sec. Bank v. Kyle Abel & Abel Enterprises*, 184 P3d 318, 323 (Mont. 2008).  In fact, each party to a contract in Montana "[has] a duty to understand the terms of the agreement."  *Gliko v. Permann*, 130 P.3d 155, 163 (Mont. 2006).  Plaintiff's attempt to compare a consumer transaction, *see Bixler v. NEXT Financial Group Inc.,* 858 F.Supp.2d 1136 (D. Mont. 2012), to the instant case fails, because consumers are fundamentally unlike corporate entities engaging in commercial transactions.  A corporation's representatives cannot refuse to read its contracts and then claim to be surprised because the terms contained therein are

12

not within its reasonable expectations.  Neither can a corporation avoid the terms

of its contracts by complaining that it was not represented by counsel.  Unlike

some consumers, corporate representatives can control whether they read contracts

or obtain the assistance of legal counsel.

No Montana law requires special explanation or initialing of arbitration

provisions in a contract between corporate entities.  *See Kortum-Managhan*, 204

P.3d at 699 (Montana *consumers* entitled to be informed of consequences of

waiver of fundamental constitutional rights to trial by jury and access to courts and

must personally consent to that waiver after information).  Moreover, the *Kortum-*

*Managhan* reasonable expectations/fundamental rights rule is preempted by the

FAA.  *Mortensen v. Bresnan Communications, LLC*, 722 F.3d 1151, 1161 (9th

Cir. 2013 ("[W]e conclude that the [*Kortum-Managhan*] reasonable

expectations/fundamental rights rule runs contrary to the FAA as interpreted by

*Concepcion* because it disproportionately applies to arbitration agreements,

invalidating them at a higher rate than other contract provisions.  We hold that the

FAA preempts the Montana reasonable/expectations/fundamental rights rule as

13

that rule is currently employed.").

Nevertheless, even if the arbitration provision was within Plaintiff's reasonable expectations, the provision might still be invalidated if it is "unduly oppressive, unconscionable or against public policy." *Kortum-Managhan*, 204 P.3d at 698. Examining the arbitration provision by its four corners, it does not appear to be oppressive or against public policy (which generally favors arbitration), so the Court focuses on whether it is unconscionable.

"Unconscionability is a two-step inquiry: (1) whether the provision fits the doctrine of a contract of adhesion such that the weaker bargaining party had no meaningful choice regarding its acceptance; and (2) whether the contractual terms are unreasonably favorable to the drafter, usually the party with superior bargaining power." *Highway Specialties, Inc. v. State*, 215 P.3d 667, 670 (Mont. 2009). Elk Mountain asserts that it was the weaker bargaining party with no meaningful choice regarding acceptance of the Dealer Agreement, and therefore the Dealer Agreement is a contract of adhesion. The Court accepts this assertion-- if only for the purpose of deciding this motion under Montana law--but the Court

14

notes that the record would be more persuasive if Elk Mountain could show that it

actually attempted to negotiate the contract and that its attempts to negotiate were

rejected.  However, the mere fact that this is a contract of adhesion does not

thereby render it unenforceable.  *See, Iwen v. U.S. West Direct*, 977 P.2d 989, ¶ 28

(Mont. 1999) ("the doctrine of adhesion itself does not constitute a sufficient basis

for invalidating a contract....").

     Elk Mountain further argues that the arbitration clause of the Dealer

Agreement unreasonably favors Arctic Cat because the arbitration clause prevents

Elk Mountain from utilizing the courts to assert its state law claims.  This

argument is unpersuasive because Elk Mountain can present its claims to the

arbitrator and is therefore not deprived of them.  *See CompuCredit Corp. v.*

*Greenwood*, 132 S.Ct. 665, 671, 181 L.Ed.2d 586 (2012) ("Thus, we have

repeatedly recognized that contractually required arbitration of claims satisfies the

statutory prescription of civil liability in court."); *see also*, *Pacificare Health*

*Systems, Inc. v. Book*, 538 U.S. 401, 123 S.Ct. 1531, 155 L.Ed.2d 578 (2003)

(compelling physicians to arbitrate their treble-damage RICO claim against

managed-health-care organization).  Elk Mountain's argument that it could receive treble-damages under the Montana Motor Vehicle Dealer Act misses the mark.

The issue is whether the "contractual *terms* are unreasonably favorable to the drafter. . . ." *Summers v. Crestview Apts.*, 236 P.3d 586 (Mont. 2010) (emphasis added).  In this case, the arbitration provision is even-handed and does not favor or disfavor either party.  The arbitration provision does not give a unilateral right to the drafter that is denied to complaining party.  *See Iwen v. U.S. West Direct*, 977 P.2d 989 (Mont. 1999) (arbitration provision unconscionable where it gives drafter right to litigate to collect debt but consumer forced to arbitrate all disputes).  Both parties must arbitrate their claims, both parties waive their rights to appeal the arbitrator's decision, the arbitrator is to divide arbitration costs between the parties justly and equitably, and the parties agree to make all documents, books, and records available to each other and to the arbitrator, as required by the arbitrator.  Elk Mountain simply ignores the arbitration provision itself instead of demonstrating how that specific contract term favors Arctic Cat

16

over Elk Mountain.[1]

It is true that Montana public policy forbids enforcement of arbitration clauses in adhesion contracts wherein the arbitration clause "lacks mutuality of obligation, is one-sided, and contains terms that are unreasonably favorable to the drafter." *Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931, 939 (9th Cir. 2001) (quoting *Iwen v. U.S. West Direct*, 977 P.2d 989, 996 (1999)).  However, in this case, the Court does not find that Montana public policy is offended by this arbitration clause, because this arbitration clause does not meet the *Iwen* criteria.

Following Montana law, the Court considers the ten-factor unconscionability test set forth in *Kortum-Managhan*, 204 P.3d at 699.  In the

---

[1]  Neither party has raised any issue relating to the Dealer Agreement's choice-of-law provision stating that the entire agreement is to be governed by Minnesota law.  (ECF No. 3-1, ¶ 21.9.)  Likewise, neither party has pointed out that the arbitration provision calls for arbitration to be conducted in Minneapolis, Minnesota.  (ECF No. 3-1, ¶ 20(a).)  Elk Mountain does not argue that the forum selection provision is unduly oppressive or shields Arctic Cat from liability.  *See Nagrampa*, 469 F.3d at 1287.  The Court does not address whether Elk Mountain's remedies are limited (or possibly expanded) by the choice-of-law provision because that issue has not been raised or briefed by the parties.

17

instant case there was little discussion about the contract and no negotiation.  The parties had entered into at least seven dealer agreements in the past seven years.  No prior agreement contained an arbitration clause.  Elk Mountain's representative signed the contract but did not read it.  Neither did Elk Mountain seek advice of counsel before signing the agreement, but it could have done so easily.

There is no explicit waiver of the right to jury trial, but 'courts' are referenced indirectly where the provision states that a "judgment upon the award of the arbitrator may be entered in any court having jurisdiction over the losing party or its assets."  (ECF No. 3-1, ¶ 20(b).)

The Court accepts Elk Mountain's allegation that there is a disparity in the bargaining power between it and Arctic Cat.  Some disparity is probably typical in dealership relationships.  However, there is no evidence from which this Court could fairly conclude that there is a significant difference in business experience and sophistication of the parties, certainly not a disparity of the sort typical in consumer transactions.  Elk Mountain stresses that since 2002 it had invested over $600,000 in facilities and employees to meet the requirements of Arctic Cat, so it

18

had no choice but to sign whatever agreement Arctic Cat offered it.  However, this is not similar to a consumer who needs a service and the only company providing that service requires the consumer to sign a contract of adhesion.  In this case, Elk Mountain could have decided to terminate its Arctic Cat dealership and instead could have obtained another dealership to sell snowmobiles and ATVs manufactured by a different corporation--or to make some entirely different business use of its facilities and employees.

Suffice it to say that the Court doubts that Elk Mountain Motor Sports is truly a "weaker" party in need of special protection, or even whether such a distinction is meaningful in a commercial, as opposed to a consumer, transaction.[2] Few corporations entering into commercial arbitration agreements will possess

---

[2] *See All-States Leasing Co. v. Top Hat Lounge, Inc.*, 649 P.2d 1250 (Mont. 1982) ("Although courts have readily applied the doctrine of unconscionability to contracts between consumers and skilled businessmen, they are reluctant to rewrite the terms of a contract between businessmen themselves. [citations omitted] When, as here, all provisions were agreed to by businessmen, none of the surrounding circumstances suggest oppression of appellants' freedom to select another lessor, and nothing on the record suggests disparity of bargaining power, the lease cannot be considered unconscionable.").

perfectly equal bargaining power.  In the manufacturer/dealer context, the "weaker" party will virtually always be the dealer.  Such a structural, industry-wide disparity is insufficient to support a finding that an arbitration agreement is unconscionable.  When the Court looks for unique factors that make this particular arbitration agreement unconscionable to Elk Mountain, the Court sees none.

The Court concludes from the foregoing that the parties entered into a valid agreement to arbitrate their disputes and that Elk Mountain's claims fall within the scope of that agreement.  Accordingly,

IT IS HEREBY ORDERED that Defendants' Motion to Compel Arbitration and Dismiss or Stay Proceedings (ECF No. 2) is GRANTED.  This case is referred for arbitration, and, pursuant to 9 U.S.C. § 3, all proceedings herein are STAYED pending conclusion of the arbitration.

Done and Dated this 30th day of September, 2013.

CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE

20